IN THE

UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

IN RE FIDELITY NATIONAL INFORMATION SERVICES, INC., FISERV, INC.,
JACK HENRY & ASSOCIATES, INC., ET AL.,

*Petitioners*

Misc. No. 14-_____

PETITION FOR WRIT SEEKING TEMPORARY STAY OF DISTRICT COURT
PROCEEDINGS PENDING DECISION ON MOTIONS TO STAY DURING
COVERED BUSINESS METHOD REVIEW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................1

II.    STATEMENT OF RELIEF REQUESTED ...................................3

III.   STATEMENT OF THE ISSUES .....................................................4

IV.    STATEMENT OF FACTS ...............................................................4

    A.   District Court Litigation Involving the Ballard Patents .......................4

    B.   CBM Review of the Ballard Patents .......................................5

    C.   Petitioners Filed CBM Stay Motions Early in the Litigation ..............6

    D.   Instead of Acting on Petitioners' Motions to Stay, the District Court Entered an Expedited Schedule.........................................7

    E.   Petitioners Sought Every Available Alternative Means for Relief .............................................................................8

    F.   Petitioners Request for Mandamus and This Court's Order ................9

    G.   The District Court Has Not Ruled on the CBM Stay Motions Since the July 10, 2014, Order ........................................10

V.     ARGUMENT....................................................................................11

    A.   This Court Should Temporarily Stay the District Court Action Pending Review of Petitioners' CBM Stay Motions .........................11

        1.   Application of the All Writs Act...............................................11

    B.   Standard for Granting Stays ....................................................15

        1.   Petitioners Have a High Likelihood that Their CBM Stay Motions Will Be Granted on the Merits ..................................15

        2.   Petitioners Will Be Irreparably Injured Absent a Stay .............20

        3.   A Stay Will Not Unduly Harm DataTreasury .........................22

        4.   The Public Interest Favors a Stay ...........................................23

i

VI.     Alternatively, This Court Can Deem the CBM Motions Denied,
        Convert This Petition into a Notice, and Permit Interlocutory Appeal
        as of Right .................................................................................................... 24

VII.    CONCLUSION ............................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Addington v. Farmer's Elevator Mutual Insurance Co.*,
   650 F.2d 663 (5th Cir.), *cert. denied*, 454 U.S. 1098 (1981) .......................24, 25

*Broadcast Innovation, L.L.C. v. Charter Communications, Inc.*,
   2006 WL 1897165 (D. Colo. July 11, 2006) ......................................................17

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
   835 F.2d 277 (Fed. Cir. 1987) ...........................................................................15

*Federal Trade Commission v. Dean Foods Co.*,
   384 U.S. 597 (1966)...........................................................................11, 12, 13

*Federal Trade Commission v. Standard Oil Co.*,
   449 U.S. 232 (1980)...........................................................................................20

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
   485 U.S. 271 (1988)...........................................................................................24

*In re McKenzie*,
   180 U.S. 536 (1901)...........................................................................................12

*In re Princo Corp.*,
   478 F.3d 1345 (Fed. Cir. 2007) .........................................................................24

*In re School Asbestos Litigation*,
   977 F.2d 770 (3d Cir. 1992) ..............................................................................14

*In re Sharon Steel Corp.*,
   918 F.2d 434 (3d Cir. 1990) ..............................................................................14

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ............................................................................21

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
   922 F. Supp. 2d 486 (D. Del. 2013)...................................................................23

*Mikkelsen Graphic Engineering, Inc. v. Zund America, Inc.*,
   541 F. App'x 964 (Fed. Cir. 2013) (unpublished)..............................................24

*Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*,
    717 F.2d 1374 (Fed. Cir. 1983) ..........................................................12

*Mitsubishi International Corp. v. Cardinal Textile Sales, Inc.*,
    14 F.3d 1507 (11th Cir. 1994) ............................................................24

*Nken v. Holder*,
    556 U.S. 418 (2009)...................................................................12, 14

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943)....................................................................12, 13

*Scripps-Howard Radio, Inc. v. Federal Communications Commission*,
    316 U.S. 4 (1942).............................................................................14

*Smith v. Barry*,
    502 U.S. 244 (1992)........................................................................25

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ........................................................15

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962) ...........................................................24

*VirtualAgility Inc. v. SalesForce.com, Inc.*,
    No. 2014-1232 (Fed. Cir. July 10, 2014)..................................*passim*

*Zenith Radio Corp. v. United States*,
    710 F.2d 806 (Fed. Cir. 1983) ...................................................12, 21

**Federal Statutes**

28 U.S.C. § 1292(a) .............................................................................24

35 U.S.C. § 101....................................................................5, 6, 16

35 U.S.C. § 112....................................................................5, 6, 16

All Writs Act, 28 U.S.C. § 1651(a) ............................................1, 4, 11

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18,
    125 Stat. 284 (2011)........................................................................*passim*

**Federal Rules**

Fed. R. App. P. 3 ..................................................................................3, 25

Fed. R. App. P. 3(c)(1) ...............................................................................25

Fed. R. App. R. 8(a) ..................................................................................25

**Other Authorities**

157 Cong. Rec. H4496 (daily ed. June 23, 2011) .....................................19

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) ..................................7, 18

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ................................20, 23

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) ..................................5, 21

*Black's Law Dictionary* (6th ed. 1990) ...................................................12

# <u>STATEMENT OF RELATED CASES</u>

A previous Petition for Writ of Mandamus, *In Re Fidelity National Information Services, Inc., Fiserv, Inc., Jack Henry & Associates, Inc., et al.*, Misc. No. 2014-138 (Fed. Cir. 2014), was before this Court.

## I.    INTRODUCTION

Petitioners respectfully petition the Court for an order under the All Writs Act, 28 U.S.C. § 1651(a), temporarily staying all litigation proceedings until the district court decides by appealable order the Petitioners' motions to stay pending covered business method ("CBM") review at the U.S. Patent and Trademark Office ("PTO") ("CBM stay motions").

Petitioners first requested a stay pending CBM review nearly eight months ago, on December 18, 2013.  Since that time, Petitioners have filed over a dozen additional papers and motions seeking a ruling from the district court on the CBM stay motions.  Left with no alternative, Petitioners filed a Petition for a Writ of Mandamus with this Court in May 2014.  The Federal Circuit issued an Order on the petition on July 10, 2014 ("Order"), instructing the U.S. District Court for the Eastern District of Texas "to promptly consider the [Petitioners'] motions for a stay in light of *VirtualAgility*"—a case decided the same day and granting a stay using the CBM stay factors on nearly identical facts.  (Ex. 1 at 2 (citing *VirtualAgility Inc. v. SalesForce.com, Inc.*, No. 2014-1232 (Fed. Cir. July 10, 2014)).)

Five weeks have passed since this Court directed the district court to give prompt consideration of Petitioners' CBM stay motions.  (*Id.*)  And three and a half months have passed since the Patent Trial and Appeal Board ("PTAB")

instituted Petitioners' CBMs and found that all of the claims in the patents-in-suit are more likely than not unpatentable. Yet the district court has not ruled, notwithstanding the directive that "the court should make every effort to expeditiously resolve the stay motion after the PTAB has made its CBM review determination," lest inaction "undermine the intent of Congress to allow for stays to prevent unnecessary duplication of proceedings." *VirtualAgility*, slip op. at 17. Lacking such decision, Petitioners have been forced to continue with costly productions and proceedings.

A ruling by a district court on a motion to stay pending resolution of a CBM review triggers "an immediate interlocutory appeal" to the Federal Circuit. Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 18(b)(2), 125 Stat. 284 (2011). Here, the district court's failure to rule upsets the statutorily prescribed process, preventing appellate review. This Court's recent Order directing the district court to promptly consider the CBM stay motions sought to avoid prolonging this state of limbo. Because the district court's consideration of this case in light of *VirtualAgility* is now extending into its second month, an order from this Court to temporarily stay litigation proceedings would allow the district court the time it needs to decide, while sparing the parties harms Congress intended to eliminate. *See VirtualAgility*, slip op. at 17. Thus, while these circumstances are extraordinary, the scope of relief sought is narrowly tailored to

2

be commensurate with the Court's Order: a temporary stay of proceedings that does not remove the decision from the district court acting according to its own docket, but spares the Petitioners further harm in the meantime.

In the alternative, this Court may deem the Petitioners' CBM stay motions constructively denied by the district court due to both its inaction and subsequent orders that are inconsistent with the relief sought. On July 17, 2014, the district court denied an Emergency Motion for Extension of Time filed by Petitioners seeking to push back some expensive production deadlines in view of the Order's call for an imminent merits determination on the CBM stay motions. The district court schedule has been set at a very fast pace. The inability to obtain relief from those deadlines subjected the Defendants to broad and expensive discovery and hearing deadlines, despite the pending PTAB proceedings. (*See infra* § IV.D-G.) This necessarily indicates the Petitioners' CBM stay motions are constructively denied. This petition may therefore be viewed alternatively as a notice of appeal under Fed. R. App. P. 3, commencing interlocutory appeal as of right. (*See infra* § VI.)

## II.    STATEMENT OF RELIEF REQUESTED

◦ An order temporarily staying the district court litigation proceedings until the district court decides by appealable order the Petitioners' CBM stay motions.

◦ Alternatively, an order deeming the Petitioners' CBM stay motions constructively denied by the district court, and permitting interlocutory appeal based on the notice provided by this petition.

## III.   STATEMENT OF THE ISSUES

◦ Whether this Court under the All Writs Act, 28 U.S.C. § 1651(a), should temporarily stay the district court litigation pending review of Petitioners' CBM stay motions pursuant to AIA § 18(b).

◦ Whether this Court should alternatively deem the Petitioner's CBM stay motions constructively denied by the district court and permit interlocutory appeal.

## IV.   STATEMENT OF FACTS

Many principal facts underlying this case were recently detailed for the Court in the Petition for Writ of Mandamus filed on May 22, 2014.  Petitioners incorporate by reference the Statement of Facts from their earlier Petition for Writ of Mandamus.  (Ex. 2.)  The following highlights the most salient facts contained in the previous petition, as well as several new facts.

### A.   District Court Litigation Involving the Ballard Patents

These trial-court actions were commenced when DataTreasury Corporation ("DataTreasury") filed three lawsuits in the Eastern District of Texas for alleged infringement of related U.S. Patent Nos. 5,910,988 ("the '988 patent") and 6,032,137 ("the '137 patent") (collectively, the "Ballard Patents").  DataTreasury is a privately held company in the business of "patent litigation and

4

licensing." (Ex. 3.) DataTreasury's three consolidated cases at issue collectively named roughly 130 defendants, including many local and community banks, holding companies, and credit unions.

### B.    CBM Review of the Ballard Patents

The Ballard Patents are CBM patents that relate to processing documents and data from "sale, business, banking and general consumer transactions." (Ex. 4, col.1, ll.6-9.) The asserted claims purportedly cover "image-based check processing." (Ex. 5, ¶ 1.)

On October 25, 2013, Fidelity National Information Services, Inc. ("FIS") filed two CBM petitions, CBM2014-00020 and CBM2014-00021. The CBM petitions requested that the PTO review the patentability of the Ballard Patents under 35 U.S.C. §§ 101 and 112. All defendants in these three actions have agreed to be bound by the estoppel provisions of AIA § 18(a)(1)(D) to the same extent that those provisions apply to FIS.[1]

In its CBM petitions, FIS noted that the Ballard Patents fit squarely within the definition of "covered business method patents." Indeed, the Ballard Patents *are the very patents* that inspired Congress to create the CBM review procedure.

---

[1] While the requested relief in this petition is only based on FIS's CBM petitions, it should be noted that the PTAB has recently instituted a second CBM proceeding finding that all asserted claims of the '988 patent more likely than not unpatentable and asserted claims 42 and 43 of the '137 patent more likely than not unpatentable. (*See* Ex. 6.) Multiple instituted CBM proceedings weigh even heavier for a stay.

5

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl: "This

section grew out of concerns originally raised in the 110th Congress about

financial institutions' inability to take advantage of the authority to clear checks

electronically pursuant [sic] the Check Clearing for the 21st Century Act . . .

without infringing the so-called Ballard patents, patents number 5,910,988 and

6,032,137. . . .  Both of these patents are obviously business-method patents, and it

is difficult to see how they were even novel and nonobvious and otherwise valid

under the more liberal State Street standard [for patent-eligible subject matter

under § 101], much less how they could survive the strictures of Bilski.").

On April 29, 2014, the PTAB found each and every claim in the asserted

Ballard Patents "more likely than not unpatentable" under 35 U.S.C. §§ 101

and/or 112, and instituted CBM proceedings.  (Ex. 7 at 2; Ex. 8 at 2.)

### C.    Petitioners Filed CBM Stay Motions Early in the Litigation

On December 18, 2013, in the "infancy" of this case before any scheduling

conference, defendants in the FIS action (No. 2:13-cv-00432) filed a motion to stay

the district court's proceedings pending resolution of the CBM petitions.  (*See*

Ex. 9.)  Defendants in the Jack Henry action (No. 2:13-cv-00433) filed a similar

motion to stay on January 2, 2014, as did defendants in the Fiserv action (No. 2:13-

cv-00431) on January 13, 2014.  (*See* Ex. 10; Ex. 11.)  At the time Petitioners filed

their CBM stay motions eight months ago, the district court had not issued a scheduling order and no discovery had occurred.

The three CBM stay motions relied on the statutory framework created by Congress.  AIA § 18(b).  Congress mandated that four factors be used to determine whether a stay should be entered in the CBM context, adding in the Congressional Record that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay."  157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Schumer).

### D.    Instead of Acting on Petitioners' Motions to Stay, the District Court Entered an Expedited Schedule

The district court did not decide Petitioners' CBM stay motions, either at the time of filing or once the PTAB instituted review.  Instead, the district court issued its Docket Control Order on February 19, 2014.  (*See* Ex. 12.)  The district court entered the schedule over Petitioners' objection that it "should not be entered until the Pending [Stay] Motions are decided."  (Ex. 13 at 2.)  The Docket Control Order set deadlines and dates for discovery, invalidity contentions, claim-construction briefing, *Markman* hearings, and a jury trial before Judge Gilstrap—all by April 2015.  (Ex. 12.)

The aggressive scheduling order has required Petitioners to move forward with extremely costly discovery while waiting eight months now for a decision on the CBM stay motions.  For example, the parties have already collectively spent

7

*millions of dollars* on e-discovery alone and it will cost even more to complete document production by <u>August 18, 2014</u>.  (*See id.* at 3; Ex. 14 at 3.)  While the 130+ defendants have incurred huge expenses, there is more to come.  The opening claim-construction brief is due on August 19, 2014, with responsive briefing due three weeks later, and a *Markman* hearing on September 26, 2014.  (Ex. 12 at 2.)  From there, other litigation obligations stack up quickly until trial, including full expert discovery, dispositive motions, pretrial disclosures, and order submissions.  (*Id.* at 1-2.)  Of course, all of this district court litigation is being conducted in parallel with the instituted PTAB proceedings.

### E.    Petitioners Sought Every Available Alternative Means for Relief

After waiting months for the district court to act on their CBM stay motions, Petitioners sought alternative means for the relief requested.  First, Petitioners filed an Emergency Motion to Stay Proceedings in the trial court on April 4, 2014.  (*See* Ex. 15.)  The emergency motion of last April requested of the district court a temporary stay until it had an opportunity to rule on the underlying CBM stay motions (i.e., the same relief that is now sought from the Federal Circuit).  Over four months later, the district court has taken no action, or even set a hearing.

Upon the PTO's institution of the CBM proceedings, Petitioners immediately apprised the district court and asked DataTreasury whether it "would be willing to withdraw its opposition to Defendants' Emergency Motion to Stay

Proceedings." (Ex. 16.) DataTreasury refused, citing "the tight discovery schedule." (*Id.*)

In total, Petitioners have filed four motions to stay, a formal renewal of their Emergency Motion to Stay Proceedings, a request to extend discovery deadlines, and nine notifications related to their CBM stay motions. (*See* Ex. 17; Ex. 18.)

### F.    Petitioners Request for Mandamus and This Court's Order

Lacking any alternative means, Petitioners sought mandamus relief from this Court on May 22, 2014. (Ex. 2.) After full briefing, the Court denied the Petitioners' remedy, but issued the following instruction to the trial court:

> We note that in *VirtualAgility* . . . , this court recently
> addressed the proper application of the factors for
> assessing a motion to stay district court proceedings
> pursuant to Section 18(a)(1)(B) of the America Invents
> Act after Covered Business Method Review has been
> invoked. *We deem it the better course to deny the
> petition and for the district court to promptly consider
> the motions for a stay in light of* VirtualAgility.

(Ex. 1 at 2 (emphasis added) (citations omitted).)

In *VirtualAgility*, the Federal Circuit reversed a decision of the same district court not to stay infringement proceedings pending the conclusion of CBM review. As a matter of record, the timing in this case is nearly identical to that noted by the Federal Circuit in granting a stay pending PTAB proceedings: (i) "[a]t the time Defendants filed their motion . . . [d]iscovery had not yet begun and no trial date had been set"; and (ii) "[a]s of the date the PTAB granted CBM review, there

remained eight months of fact discovery, the joint claim construction statements had yet to be filed, and jury selection was a year away." *Compare VirtualAgility*, slip op. at 19, *with* Ex. 12.

### G.    The District Court Has Not Ruled on the CBM Stay Motions Since the July 10, 2014, Order

The district court was promptly provided with notice of this Court's Order. Almost a week after the Order, on July 16, 2014, DataTreasury requested leave to provide three pages of supplemental briefing on this Court's *VirtualAgility* decision; the district court granted the request within hours after it was filed, increasing the page limit to fifteen per side.  (Ex. 19; Ex. 20.)  Because of the quick ruling, Petitioners were not allowed to file an opposition to the supplemental-briefing exercise, explaining that the impact of the *VirtualAgility* opinion is clear on its face given the highly overlapping fact patterns and the need for a prompt ruling given upcoming deadlines.[2]  The parties nonetheless completed the supplemental briefing as directed three weeks ago, on July 25, 2014.[3]

On the same day that the court ordered supplemental briefing, Petitioners filed an Emergency Motion for Extension of Time, explaining that they have

---

[2] Indeed, notwithstanding that it had proposed the additional briefing, DataTreasury suggested on the first page of its supplemental brief that such briefing was not really necessary, stating: "DataTreasury largely rests on its prior submissions."  (Ex. 21 at 1.)

[3] In their supplemental brief of July 25, 2014, Petitioners also renewed their request to the district court that it grant Defendants' Emergency Motion to Stay Proceedings, filed in April.  (Ex. 22 at 14.)

"expended and will continue to expend an exorbitant amount of effort, time, and resources, in an effort to comply with the impending document production deadlines." (Ex. 23 at 2.) Petitioners stated that 60 attorneys and staff had collected tens of millions of pages for production, and that number was expected to rise. (*Id*.) In addition to the necessity of an extension due to the mass of information to review and produce, they reasoned that the modest extension would allow the district court an opportunity to fully "consider the pending motions to stay in light of the Federal Circuit's recent clarification of the factors governing stays in precisely this type of scenario." (*Id*. at 3.) The motion was denied the next day with no mention of the Federal Circuit's Order. (Ex. 24.) Petitioners continue to labor under the tight schedule and have spent millions of dollars producing documents.

## V.    ARGUMENT

### A.    This Court Should Temporarily Stay the District Court Action Pending Review of Petitioners' CBM Stay Motions

#### 1.    Application of the All Writs Act

The All Writs Act, 28 U.S.C. § 1651(a), virtually unchanged since first codified in 1789, reads: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See also FTC v. Dean Foods Co.*, 384 U.S. 597, 605, 608 (1966) ("[T]he courts of appeals derive

11

their power to grant preliminary relief . . . from the All Writs Act and its

predecessors dating back to the first Judiciary Act of 1789.  Congress has never

restricted the power which the courts of appeals may exercise under that Act.").

Although the All Writs Act is commonly known for providing a basis for

mandamus, "its use is not that restricted."  *Miss. Chem. Corp. v. Swift Agric.*

*Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983).  Under a line of Supreme

Court authority, appellate courts have residual powers in the All Writs Act, for

example, to grant stays or enter injunctions.[4]  *Zenith Radio Corp. v. United States*,

710 F.2d 806, 809 (Fed. Cir. 1983) (finding that the Supreme Court has

"confirm[ed] the authority of appellate courts to entertain requests for injunctive

relief under the All Writs Act"); *see also*, *e.g.*, *Nken*, 556 U.S. at 426 (stays);

*Dean Foods*, 384 U.S. at 605, 608 (injunctions); *In re McKenzie*, 180 U.S. 536,

550 (1901) (writs of supersedeas).

Importantly, an appellate court acting under the All Writs Act "is not

confined to the issuance of writs in aid of a jurisdiction already acquired by appeal

but extends to those cases which are within its appellate jurisdiction although no

appeal has been perfected."  *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25

---

[4] While an injunction "directs the conduct of a party," by contrast, "a stay operates
upon the judicial proceeding itself . . . either by halting or postponing some portion
of the proceeding, or by temporarily divesting an order of enforceability."  *Nken v.
Holder*, 556 U.S. 418, 428 (2009) (citing *Black's Law Dictionary* 1413 (6th ed.
1990) (defining "stay" as "a suspension of the case or some designated
proceedings within it")).

(1943).  "Otherwise," elaborated the Supreme Court, "the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ *thwarted by unauthorized action of the district court obstructing the appeal*."  *Id*. (emphasis added); *accord Dean Foods*, 384 U.S. at 603 (appellate court's power to enter injunction "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").

Petitioners have exhaustively briefed for the Court in their Petition for Writ of Mandamus, filed May 22, 2014, the reasons they qualify for mandamus relief.  (Ex. 2.)  But the temporary relief requested in this petition makes it even clearer that no alternative means are available.  Petitioners seek a stay that will grant a temporary reprieve of the fact and expert discovery, claim-construction schedule, and impending trial schedule, while still allowing the district court to decide the CBM stay motions.  Petitioners have unsuccessfully asked for this relief from the district court already.  (*See supra* § IV.E-G.)  For all relevant purposes, this is the same type of relief sought in Petitioners' Emergency Motion to Extend Time that was denied by the district court a week after the Order.  It is also the identical relief requested in April's Emergency Motion to Stay Proceedings in the district court pending its decision on the CBM stay motions—renewed again on July 25, 2014, after this Court's Order—but which has still not been decided.  (*See* Ex. 22 at 14 ("In the event that the Court desires additional time to consider the impact of

[*VirtualAgility*], Defendants request that the Court contemporaneously grant

Defendants' Emergency Motion to Stay Proceedings (Dkt. 314).").)  Failing these,

Petitioners have no option but to seek temporary stay relief from the Court by

extraordinary writ.  A clear and indisputable right to the relief is described more

fully below, along with a discussion of harms.  (*See infra* § V.B.)

This Court has strong tools in equity, including issuing stays, under the All

Writs Act to afford Petitioners the relief prayed for "as part of a court's 'traditional

equipment for the administration of justice.'"  *Nken*, 556 U.S. at 427 (quoting

*Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942) (involving the

traditional authority of reviewing courts to grant stays)); *cf. In re Sch. Asbestos

Litig.*, 977 F.2d 770, 773 (3d Cir. 1992) (extraordinary writs are a "safety valve

(one of several safety valves, in fact) in the final-judgment rule, and its proper use

cannot be wholly reduced to formula" (citation omitted)).  The unique

circumstances in this matter are deserving of a unique remedy; it is the only way in

aid of its jurisdiction that the Court may reach this case, which continues to evade

review to the material detriment of the Petitioners.  *In re Sch. Asbestos*, 977 F.2d at

792-93; *In re Sharon Steel Corp.*, 918 F.2d 434, 436-37 (3d Cir. 1990) ("Not only

is the district court's inaction an unexplained abdication of judicial power, but it

severely restricts ARCO's right to an appeal by defeating our jurisdiction.").

**B.    Standard for Granting Stays**

In evaluating a motion to stay, four factors are considered:

(1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (citations omitted).  Each factor in this analysis "need not be given equal weight."  *Id.*  Furthermore, the Court should "weigh[] the equities as they affect the parties and the public."  *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987).

**1.    Petitioners Have a High Likelihood that Their CBM Stay Motions Will Be Granted on the Merits**

Specifically, each of the four statutory stay factors in AIA § 18(b)(1) weighs heavily in favor of a stay, especially in light of *VirtualAgility*:

(1) **"[W]hether a stay, or the denial thereof, will simplify the issues in question and streamline the trial."**  After *VirtualAgility*, even DataTreasury concedes that the simplification-of-issues factor weighs for a stay.  (Ex. 21 at 2 ("Thus, under the majority opinion in *VirtualAgility*, the simplification of issues factor weighs towards a stay.").)  The CBM review will either obviate the need for

or streamline the trial. As in *VirtualAgility*, here the PTAB instituted CBM review, finding "more likely than not" that *all of the claims* in the asserted patents are unpatentable under § 101 and/or § 112. Thus, "[t]his would not just reduce the burden of litigation on the parties and the court—it would entirely eliminate it." *VirtualAgility*, slip op. at 14. DataTreasury's admission that it may amend asserted claims is also relevant under this factor. The Federal Circuit held that a plaintiff's motion to amend claims in a CBM proceeding "could only weigh further in favor of granting the stay so as to avoid unnecessary claim construction of what could potentially be a moving target in terms of claim language." *Id.* at 13-14. This first factor does not just weigh in favor of a stay here—it weighs "heavily" in favor of a stay.

(2) **"[W]hether discovery is complete and whether a trial date has been set."** The timing analysis also heavily favors a stay pending CBM review. The Federal Circuit held on nearly an identical schedule that, regardless of whether the pertinent time period runs from the date that Defendants' Motions to Stay were filed, or the date that the PTAB decisions were granted, "[t]he litigation at either time was still at its infancy, which favors granting [a] stay." *Id.* at 19. In any event, Petitioners first requested a stay almost eight months ago. It cannot be the law that CBM stay motions filed in the "infancy" of a case can be passed-over for months and months, only to be eventually denied as too late under this factor.

16

*Cf. id.* at 18-19. And notwithstanding the production of millions of pages of documents, fact discovery remains in its early stages and does not end until December 2014; the claim-construction hearing has not yet occurred, and trial is set for April 2015. (Ex. 12.) Even at this point, moreover, the case is no more advanced than others benefitting from a stay in related contexts. *Cf. Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 2006 WL 1897165 (D. Colo. July 11, 2006) (cited in the AIA's legislative history as the model for the four CBM stay factors and granting a stay pending reexamination despite being only three months from trial). The second factor overwhelmingly favors a stay based on the early filing of the motions and the fact that much remains to be done prior to trial.

(3) **"[W]hether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party."** One place where the facts of this case diverge from *VirtualAgility* is on the issue of direct competition. This divergence only further favors a stay here. In *VirtualAgility*, plaintiff and defendant were "in the same business space." *VirtualAgility*, slip op. at 21. Here, DataTreasury admits that it does not compete with Petitioners. (Ex. 21 at 7.) Moreover, DataTreasury is not likely to obtain a permanent injunction since it does not practice its patents. Following a stay, DataTreasury will be entitled to seek the same remedies that it would have without a stay. *VirtualAgility*, slip op. at 22 (finding that a "stay will not diminish the

17

monetary damages to which [plaintiff] will be entitled if it succeeds in its infringement suit"). The *VirtualAgility* Court also found that, without more, there is no legitimate risk of a loss of evidence over the short duration of the CBM proceedings, particularly where the parties can preserve evidence. *Id.* at 23 ("There is no evidence that any of these individuals are in ill health, and at least one of the older witnesses has already been deposed."). DataTreasury presents no actual evidence of that risk, either. Finally, DataTreasury cannot be heard to complain about delay when it waited many years to assert its alleged infringement claim against some of the Petitioners; *VirtualAgility* holds that the patentee's delays in bringing suit belie claims of undue prejudice. *Id.* at 23, 25. The third factor favors Petitioners.

(4) **"[W]hether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court."** The Congressional Record indicates that the fourth factor "places a very heavy thumb on the scale in favor of [a] stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Schumer). In addition to most of the considerations from the first factor being applicable here, in *VirtualAgility*, this Court stated that "the reduced burden of litigation factor may implicate other considerations, such as the number of plaintiffs and defendants, the parties' and witnesses' places of residence, issues of convenience, the court's docket, and in particular its potential familiarity with the patents at issue."

*VirtualAgility*, slip op. at 14 n.4.  All of these considerations favor granting a stay: the nature of the consolidated cases adds complexity; the key witnesses reside outside of Texas; the court is busy; and the presiding judge does not possess specific familiarity with the asserted patents.  As there are about 130 defendants, the burden of this litigation is multiplied many times for the parties and the court. A stay prevents DataTreasury from further imposing on the many Petitioners the burden of preparing for and conducting hundreds of depositions, and participating in unnecessary claim construction, expert discovery, motions practice, pretrial briefing, and jury trial.  As referenced above, a stay will also eliminate significant burdens that are *currently and will continue to be* incurred by the parties during the pendency of the CBM proceedings, forcing them into a dual track.  As the very purpose envisioned by AIA § 18 is to avoid duplicative litigation, the ability to eliminate the burdens associated with simultaneous litigation cannot be overstated. This factor also heavily favors Petitioners.

In sum, all of the AIA factors for a stay during CBM review weigh for Petitioners in this case, more so even than in *VirtualAgility*.  Based on a straightforward reading of that case of first impression, a stay is highly likely here, as Congress envisioned.

## 2.    Petitioners Will Be Irreparably Injured Absent a Stay

As Congress recognized when it enacted AIA § 18(a), the favorable stay provision allows for "an inexpensive and faster *alternative*" to district court litigation.  157 Cong. Rec. H4496 (daily ed. June 23, 2011) (statement of Rep. Smith) (emphasis added).  This provision plainly reflects Congress's recognition that the expenditure of time and resources required by dual-track litigation represents serious harm that will be avoided by a stay during CBM review.[5]  To ensure this right, Congress further enacted AIA § 18(b), which allows a party to "take an immediate interlocutory appeal from a district court's decision" on a CBM stay motion.  Senator Schumer explained: "A de novo review is central to the purpose of the interlocutory appeal provision in the Schumer-Kyl amendment, which is to ensure consistent application of standards and precedents across the country and to avoid one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).  The temporary stay sought here prevents the harms described above until such time as the decision is made available for appellate review by the Federal Circuit.

---

[5] DataTreasury's continued reliance on one or more cases directed to litigation expenses outside of the landscape of the new CBM legislation (*e.g.*, *FTC v. Standard Oil Co.*, 449 U.S. 232, 243-44 (1980)) is misplaced.

Without the relief requested in this petition, effective appellate review is evaded and the legal and practical value of the right to interlocutory appeal is destroyed. This Court has recognized that it may "constitute irreparable injury" when a "statutory right to obtain judicial review of the determination would be without meaning," nullifying the intent of Congress when it passed an express remedial provision. *See Zenith*, 710 F.2d at 810-11. In this case, the statutorily prescribed right to interlocutory review will be rendered meaningless if Petitioners must continue to fully endure harms the AIA was designed to avoid. Under these circumstances, the Court's opportunity to enter a meaningful final order in its own respect vanishes, which is in and of itself an irreparable harm to Petitioners. *See id.* at 811-12 ("Accordingly, the inability of reviewing courts to meaningfully correct the review determination is irreparable injury that must be considered . . . along with the other pertinent factors . . . ."); *cf. Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163-65 (1803) (finding that where a right has been granted, there must also be a remedy whenever that right is invaded).

Finally, DataTreasury continues to inflict on Petitioners—many of whom are community banks and credit unions—"a costly court battle." (Ex. 25.) Avoiding this was the very impetus for creating "a relatively inexpensive administrative alternative to litigation for addressing disputes concerning the validity of these patents" under AIA § 18. 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011)

(statement of Sen. Kyl). In *VirtualAgility*, the Court agreed that quick action is required to avoid such harms: "Of course, *the court should make every effort to expeditiously resolve the stay motion* after the PTAB has made its CBM review determination. To do otherwise would undermine the intent of Congress to allow for stays to prevent unnecessary duplication of proceedings." *VirtualAgility*, slip op. at 17 (emphasis added).

Adding insult to injury, Petitioners must soon engage in claim construction on patents that the PTO has already indicated are "more likely than not unpatentable" on multiple grounds and which DataTreasury has indicated it may amend. (*See* Ex. 12; Ex. 14.) Petitioners will be forced, at claim construction and beyond, to unnecessarily take litigation positions that may be more prudently considered, if at all, after the PTAB renders its final written determination.

### 3.    A Stay Will Not Unduly Harm DataTreasury

DataTreasury will suffer no undue harm from a temporary stay lasting through the district court's consideration and final determination of the CBM stay motions. As mentioned, this is a narrowly tailored request lasting no longer than necessary to effect the intent of this Court's Order of July 10, 2014.

It is worth noting that in *VirtualAgility*, this Court entered a stay of the district court litigation proceedings during pendency of the entire interlocutory appeal—and that case involved competitors, which is not the case here. (Ex. 21 at

22

7.)  None of DataTreasury's arguments present undue burdens to prevent the stay sought here.

### 4.    The Public Interest Favors a Stay

The public interest also supports a stay.  The public has an interest in the efficient use of scarce judicial resources.  Here, the PTAB has determined that the Ballard Patents are "more likely than not unpatentable."  Any judicial resources spent addressing the construction and infringement of unpatentable claims— whether managing discovery or conducting *Markman* proceedings—will likely be wasted.  And to the degree claims survive, they will likely be altered.

The public also has an interest in district courts correctly implementing the laws of Congress, as interpreted by this Court.  Congress enacted the special CBM stay provisions and provided a right to an immediate interlocutory appeal to ensure that incorrectly decided stays were quickly reversed.  AIA § 18(b)(2).  The district court's inability or refusal to decide in this case prevents that very appellate review.  Such inaction could, on the favorable facts of this case, be viewed as allowing dual-track proceedings to occur in spite of Congress.[6]  The requested stay

---

[6] "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time.  This is unacceptable, and would be contrary to the fundamental purpose of the Schumer–Kyl amendment to provide a cost-efficient alternative to litigation."  *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 490 n.4 (D. Del. 2013) (quoting 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer)).

therefore relieves the burden on the litigants while permitting the district court to decide the motions in accordance with its docket.

## VI. Alternatively, This Court Can Deem the CBM Motions Denied, Convert This Petition into a Notice, and Permit Interlocutory Appeal as of Right

The district court has effectively denied Petitioners' CBM stay motions and prohibited them from seeking an interlocutory appeal in this Court. *See, e.g.*, *In re Princo Corp.*, 478 F.3d 1345, 1349 (Fed. Cir. 2007) (district court failed to rule on a motion for a stay to be continued, "thus effectively denying it").[7]

It is well established that the denial of a motion by the district court, although not formally expressed, may be implied by a subsequent order inconsistent with the granting of the relief sought. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir.), *cert. denied*, 454 U.S. 1098 (1981) (district court denied party's motion by implication when it entered an order inconsistent with the relief sought); *see also Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, 541 F. App'x 964, 970 n.2 (Fed. Cir. 2013) ("The denial of a

---

[7] Reasoning by analogy, interlocutory appeals are also provided by Congress in the related injunction context, whether granted or denied. *Compare* 28 U.S.C. § 1292(a) *with* AIA § 18(b). The case law is far more developed in that area, enough so even to reach courts failing to timely rule and "hav[ing] the practical effect of . . . denying injunctions." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988). Faced with inaction, "[a]ppellate courts have even identified appealable denials of preliminary injunctions in rare cases in which the district court in fact issued no order at all." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1515-16 (11th Cir. 1994); *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). The same rationale should apply here to give effect to the right of immediate appellate review Congress afforded.

motion by the district court, although not formally expressed, may be implied by . . . an order inconsistent with the granting of the relief sought by the motion." (quoting *Addington*, 650 F.2d at 666)).

The overnight denial of Petitioner's Emergency Motion for Extension of Time (Ex. 23; Ex. 24) is necessarily "inconsistent" with the relief requested in the CBM stay motions filed some eight months earlier and Petitioners' motion for an emergency stay. *See Addington*, 650 F.2d at 666. The Court may appropriately find a constructive denial of the earlier CBM stay motions.

If it agrees that the interlocutory appeal is perfected, this Court need not wait for a formal notice of appeal. Rather, the Court could deem the notice of appeal filed by converting this petition to that purpose. *Smith v. Barry*, 502 U.S. 244, 248-49 (1992) ("[T]he notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal."). There is no dispute that this document is effective as a notice of appeal, as it sufficiently identifies the parties taking the appeal, the judgment being appealed, and the court to which the appeal is taken. Fed. R. App. P. 3(c)(1).[8]

---

[8] If this course is adopted, Petitioners respectfully request that the Court simultaneously enter a stay pending appeal under Fed. R. App. R. 8(a), applying

## VII.  CONCLUSION

For the reasons set forth above, Petitioners respectfully request that this Court stay the underlying litigation pending the district court's ruling on the CBM stay motions pursuant to the Order.  Alternatively, Petitioners request that the Court deem the CBM stay motions denied by the district court, and permit interlocutory appeal as of right.  Petitioners respectfully submit that, given the prior and extensive briefing that has already been provided to this Court, additional briefing is not necessary.  At a minimum, Petitioners ask that any briefing be expedited.

---

the analysis outlined in § V.B, *supra*, and recognizing on these facts that first seeking this relief from the district court was "impracticable."

Dated:      Washington, DC
            August 13, 2014

                                        Respectfully submitted,


                                        /s/ Kara F. Stoll
                                        Kara F. Stoll
                                        FINNEGAN, HENDERSON, FARABOW,
                                          GARRETT & DUNNER, LLP
                                        901 New York Avenue, NW
                                        Washington, DC 20001-4413
                                        (202) 408-4000

                                        Daniel C. Cooley
                                        J. Derek McCorquindale
                                        FINNEGAN, HENDERSON, FARABOW,
                                          GARRETT & DUNNER, LLP
                                        11955 Freedom Drive
                                        Reston, VA 20190
                                        (202) 408-4000

                                        John G. Flaim
                                        Jay F. Utley
                                        W. Barton Rankin
                                        Mackenzie M. DeWerff
                                        BAKER & MCKENZIE LLP
                                        2300 Trammell Crow Center
                                        2001 Ross Avenue
                                        Dallas, TX 75201
                                        (214) 978-3000

                                        *Attorneys for Fidelity National Information
                                        Services, Inc.*

/s/ David A. Roodman
David A. Roodman
Nick Williamson
Emma C. Harty
BRYAN CAVE LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63012-2750
(314) 259-2000

Robert G. Lancaster
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100

*Attorneys for Fiserv, Inc.; AFNB Holdings, Inc.; Bank of the West; Chisholm Bancshares, Inc.; First Community Bank, NA; First Texoma National Bank; FNB Financial Services, Inc.; Henderson Federal Savings Bank; Heritage Bank; Huntington Bancshares, Inc.; IBT Bancorp, Inc.; JLL Associates G.P. FCH, L.L.C.; The First National Bank of Livingston; American First National Bank; Carlile Bancshares, Inc.; Citizens 1st Bank; First Liberty National Bancshares, Inc.; Greater Southwest Bancshares, Inc.; Heritage Bancorp, Inc.; Hull State Bank; Huntington State Bank; Independent Bank of Texas; Joaquin Bankshares, Inc.; Lamar Bancorporation, Inc.; Lamar National Bank; Landmark Bank, NA; North Texas Bank, National Association; Northstar Bank of Texas; Peoples Bank; Texas Peoples National Bancshares, Inc.; Texas State Bank; The East Texas National Bank of Palestine; The First Liberty National Bank;*

 /s/ Jay F. Utley
John G. Flaim
Jay F. Utley
W. Barton Rankin
Mackenzie M. DeWerff
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
(214) 978-3000

*Attorneys for Accessbank Texas; Beal Bank, SSB.; Beal Financial Corporation; Citizens National Bank; The First National Bank of Bells/Savoy (Now Cendera Bank, N.A.); Citizens State Bank; Colonial Holding Company; Colonial Savings, F.A.; Commerce National Financial Services, Inc.; Fayetteville Bank; First Bells Bankshares, Inc.; First Command Bank; First Command Financial Services, Inc.; First Community Bancshares, Inc.; First National Bank Texas D/B/A First Convenience Bank; Henderson Citizens Bancshares, Inc.; Industry Bancshares, Inc.; Industry State Bank; Lubbock National Bank; Pioneer Bank, S.S.B.; Premier Bancshares, Inc.; Sabine Bancshares, Inc.; Sabine State Bank and Trust Company; Southwest Bancorp, Inc.; The Stillwater National Bank and Trust Company (Now Bank SNB, National Association); Synergy Bank, S.S.B.; Texas First Bank; Texas*

28

*The First National Bank of Kemp; The First National Bank of Trenton; The Landrum Company; Trenton Bankshares, Inc.; Valliance Bank; Valliance Financial Corp.; Viewpoint Bank, N.A.; ViewPoint Financial Group, Inc.; Veritex Community Bank; WCM Holdings, Inc.; and FNB Company*

*Independent Bancshares, Inc.; Texas Security Bank; Texas Security Bankshares, Inc.; The First National Bank of Bellville; and The First National Bank of Shiner*

/s/ Russell Jones, Jr.
Russell Jones, Jr.
Jay Heidrick
POLSINELLI
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000

/s/ Rick L. Rambo
Rick L. Rambo
Thomas R. Davis
Michael L. Raspino
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Attorneys for Jack Henry & Associates, Inc., Symitar Systems, Profitstars, Inc., Steele Holdings, Inc., American State Bank, Collin Bank, Justin State Bank, Sulphur Springs Bancshares, Inc., The City National Bank of Sulphur Springs, East Texas Bancshares, Inc., First National Bank of Jasper, First State Bank (Livingston), Overton Financial Corp., First State Bank (Overton), Lindale State Bank, Van Alstyne Financial Corporation, Texas Star Bank, Paris Bancshares, Inc., The Liberty National Bank in Paris, Independent Bank Group, Inc., Independent Bank, South Plains Financial, Inc., City Bank, SB&T Holdings, Inc., State Bank and Trust Company, Third Coast Bancshares, Inc., Third Coast Bank, SSB, Nexbank Capital, Inc., Nexbank, SSB, First Private Holdings, Inc., First Private Bank of Texas, Golden Bank, N.A., Green Bancorp, Inc., Greenbank, N.A., Midsouth Bancorp, Midsouth Bank, N.A., United Heritage*

*Attorneys for Computer Service Professionals, Inc.*

29

*Credit Union, Citizens Bancorp, Inc.,*
*Citizens National Bank, Emory Bancshares,*
*Pilot Point Bancorp, Inc., Point Bank, and*
*First National Bank of Emory*

/s/ Robert D. Nelon
Robert D. Nelon
Phillip L. Free, Jr.
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
(405) 553-2828

*Attorneys for Bankers Bancorp of*
*Oklahoma, Inc. and The Bankers Bank*

/s/ Charles M. Hosch
Charles M. Hosch
STRASBURGER & PRICE - DALLAS
901 Main St., Suite 4300
Dallas, TX 75202
(214) 651-4678

*Attorneys for Advancial Federal Credit*
*Union*

/s/ Bryan G. Harrison
Bryan G. Harrison
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
(404) 233-7000

*Attorneys for DATCU Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2014, a copy of the foregoing PETITION

FOR WRIT SEEKING TEMPORARY STAY OF DISTRICT COURT

PROCEEDINGS PENDING DECISION ON MOTIONS TO STAY DURING

COVERED BUSINESS METHOD REVIEW was served by electronic means to the

persons at the addresses listed:

| Counsel | Parties represented by one or more of the listed Counsel |
| --- | --- |
| **Andrew Joseph Wright**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd.<br>Suite 1900<br>Irving, TX 75039<br>(972) 831-1188<br>Fax: (972) 444-0716<br>Email: andrewjwright@me.com<br><br>**Christian J. Hurt**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd.<br>Suite 1900<br>Irving, TX 75039<br>(972) 831-1188<br>Fax: (972) 444-0716<br>Email: christianhurt@nixlawfirm.com<br><br>**Derek Tod Gilliland**<br>Nix Patterson & Roach, LLP - Daingerfield<br>205 Linda Drive<br>Daingerfield, TX 75638<br>(903) 645-7333<br>Fax: (903) 645-5389<br>Email: dgilliland@nixlawfirm.com | DataTreasury |

| Counsel | Parties represented by one or more of the listed Counsel |
| --- | --- |
| **Edward K. Chin**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd.<br>Suite 1900<br>Irving, TX 75039<br>(972) 831-1188<br>Fax: (972) 444-0716<br>Email: edchin@me.com | |
| **Elton Joe Kendall**<br>Kendall Law Group, LLP<br>3232 McKinney<br>Suite 700<br>Dallas, TX 75204<br>(214) 744-3000<br>Fax: (214) 744-3015<br>Email: jkendall@kendalllawgroup.com | |
| **Eric M. Albritton**<br>ALBRITTON LAW FIRM<br>P.O. Box 2649<br>111 West Tyler, 75601<br>Longview, TX 75606<br>(903) 757-8449<br>Fax: (903) 758-7397<br>Email: ema@emafirm.com | |
| **Karl Anthony Rupp**<br>Kendall Law Group, LLP<br>3232 McKinney<br>Suite 700<br>Dallas, TX 75204<br>(214) 744-3000<br>Fax: (214) 744-3015<br>Email: krupp@kendalllawgroup.com | |
| **Kirk Austin Voss**<br>Nix Patterson & Roach, LLP - Irving | |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| 5215 North O'Connor Blvd. Suite 1900 Irving, TX 75039 (972) 831-1188 Fax: (972) 444-0716 Email: kirkvoss@nixlawfirm.com **Richard Benjamin King** Nix Patterson & Roach, LLP - Texarkana 2900 Saint Michael Drive Suite 500 Texarkana, TX 75503 (903) 223-3999 Fax: (903) 223-8520 Email: benking@nixlawfirm.com **Robert Winn Cutler** Nix Patterson & Roach, LLP - Irving 5215 North O'Connor Blvd. Suite 1900 Irving, TX 75039 (972) 831-1188 Fax: (972) 444-0716 Email: winncutler@nixlawfirm.com *PRO HAC VICE* **Ross Leonoudakis** Nix Patterson & Roach, LLP - Irving 5215 North O'Connor Blvd. Suite 1900 Irving, TX 75039 (972) 831-1188 Fax: (972) 444-0716 Email: rossl@nixlawfirm.com **Thomas John Ward, Jr.** Ward & Smith Law Firm | |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| P.O. Box 1231<br>1127 Judson Road<br>Suite 220<br>Longview, TX 75606<br>(903) 757-6400<br>Fax: (903) 757-2323<br>Email: jw@wsfirm.com<br><br>**Nelson James Roach**<br>Nix Patterson & Roach, LLP - Daingerfield<br>205 Linda Drive<br>Daingerfield, TX 75638<br>(903) 645-7333<br>Fax: (903) 645-5389<br>Email: njroach@nixlawfirm.com | |
| **David A. Roodman**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-3600<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: daroodman@bryancave.com<br><br>**Nick E. Williamson**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-3600<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: nick.williamson@bryancave.com<br><br>**Ameer Gado**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600 | Fiserv, Inc.;<br>AFNB Holdings, Inc.;<br>Bank of the West;<br>Chisholm Bancshares, Inc.;<br>First Community Bank, NA;<br>First Texoma National Bank;<br>FNB Financial Services, Inc.;<br>Henderson Federal Savings Bank;<br>Heritage Bank;<br>Huntington Bancshares, Inc.;<br>IBT Bancorp, Inc.;<br>JLL Associates G.P. FCH, L.L.C.;<br>The First National Bank of Livingston;<br>American First National Bank;<br>Carlile Bancshares, Inc.;<br>Citizens 1st Bank;<br>First Liberty National Bancshares, Inc.;<br>Greater Southwest Bancshares, Inc.;<br>Heritage Bancorp, Inc.;<br>Hull State Bank;<br>Huntington State Bank;<br>Independent Bank of Texas; |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| St. Louis, MO 63102<br>(314) 259-2745<br>Fax: (314) 259-2020<br>Email: aagado@bryancave.com<br><br>**Emma C. Harty**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63105<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: emma.harty@bryancave.com<br><br>**Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP - Marshall<br>P.O. Box 1556<br>Marshall, TX 75671-1556<br>(903) 938-8900<br>Fax: (972) 767-4620<br>Email: michaelsmith@siebman.com<br><br>**Robert G. Lancaster**<br>Bryan Cave LLP - Santa Monica<br>120 Broadway<br>Suite 300<br>Santa Monica, CA 90401<br>(310) 576-2100<br>Fax: (310) 576-2200<br>Email: rglancaster@bryancave.com<br><br>**D. Woodard Glenn**<br>Attorney at Law<br>2626 Cole Avenue<br>Suite 510<br>Dallas, TX 75204<br>(214) 871-9333 | Joaquin Bankshares, Inc.;<br>Lamar Bancorporation, Inc.;<br>Lamar National Bank;<br>Landmark Bank, NA;<br>North Texas Bank,<br>National Association;<br>Northstar Bank of Texas;<br>Peoples Bank;<br>Texas Peoples National Bancshares, Inc.;<br>Texas State Bank;<br>The East Texas National Bank of Palestine;<br>The First Liberty National Bank;<br>The First National Bank of Kemp;<br>The First National Bank of Trenton;<br>The Landrum Company;<br>Trenton Bankshares, Inc.;<br>Valliance Bank;<br>Valliance Financial Corp.;<br>Viewpoint Bank, N.A.;<br>ViewPoint Financial Group, Inc.;<br>Veritex Community Bank;<br>WCM Holdings, Inc.; and<br>FNB Company |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| Fax: (214) 871-7131<br>Email: wglenn@dwgpc.com | |
| **Jay Forrest Utley**<br>Baker & McKenzie<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3036<br>Fax: (214) 978-3099<br>Email: jay.utley@bakermckenzie.com<br><br>**John G. Flaim**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3097<br>Fax: (214) 978-3099<br>Email: john.flaim@bakermckenzie.com<br><br>**Mackenzie Marie DeWerff**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3048<br>Fax: (214) 965-5946<br>Email:<br>mackenzie.dewerff@bakermckenzie.com<br><br>**Weldon Barton Rankin**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3000<br>Fax: (214) 978-3088<br>Email: bart.rankin@bakermckenzie.com | Fidelity National Information Services, Inc.;<br>Accessbank Texas;<br>Beal Bank, SSB.;<br>Beal Financial Corporation;<br>Citizens National Bank;<br>The First National Bank of Bells/Savoy (Now Cendera Bank, N.A.);<br>Citizens State Bank;<br>Colonial Holding Company;<br>Colonial Savings, F.A.;<br>Commerce National Financial Services, Inc.;<br>Fayetteville Bank;<br>First Bells Bankshares, Inc.;<br>First Command Bank;<br>First Command Financial Services, Inc.;<br>First Community Bancshares, Inc.;<br>First National Bank Texas D/B/A First Convenience Bank;<br>Henderson Citizens Bancshares, Inc.;<br>Industry Bancshares, Inc.;<br>Industry State Bank;<br>Lubbock National Bank;<br>Pioneer Bank, S.S.B.;<br>Premier Bancshares, Inc.;<br>Sabine Bancshares, Inc.;<br>Sabine State Bank and Trust Company;<br>Southwest Bancorp, Inc.;<br>The Stillwater National Bank and Trust Company (now Bank SNB, National Association);<br>Synergy Bank, S.S.B.;<br>Texas First Bank;<br>Texas Independent Bancshares, Inc.;<br>Texas Security Bank; |

| Counsel | Parties represented by one or more of the listed Counsel |
|---------|----------------------------------------------------------|
| **J. Pat Heptig**<br>Heptig Law Group, Ltd.<br>15050 E. Beltway Pkwy.<br>Suite 200<br>Addison, TX 75001<br>(214) 451-2154<br>Fax: (214) 451-2154<br>Email: pheptig@heptiglaw.com<br><br>**Bryan Haynes**<br>Scheef & Stone, L.L.P.<br>500 N. Akard<br>Suite 2700<br>Dallas, TX 75201<br>(214) 706-4234<br>Fax: (214) 706-4242<br>Email: bryan.haynes@solidcounsel.com<br><br>**James Mark Mann**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>(903) 657-8540<br>Fax: (903) 657-6003<br>Email: mark@themannfirm.com<br><br>**Stacie H. Tandy**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>(903) 657-8540<br>Fax: (903) 657-6003<br>Email: stacie@themannfirm.com | Texas Security Bankshares, Inc.;<br>The First National Bank of Bellville; and<br>The First National Bank of Shiner |
| **Douglas Ray McSwane, Jr.**<br>Potter Minton, a Professional<br>Corporation<br>110 N. College Avenue<br>Suite 500 | Jack Henry & Associates, Inc.,<br>Symitar Systems,<br>Profitstars, Inc.,<br>Steele Holdings, Inc.,<br>American State Bank, |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| Tyler, TX 75702<br>(903) 597-8311<br>Fax: (903) 593-0846<br>Email:<br>dougmcswane@potterminton.com<br><br>**Jason Dwain Mazingo**<br>Potter Minton, a Professional<br>Corporation<br>110 N. College Avenue<br>Suite 500<br>Tyler, TX 75702<br>(903) 525-2266<br>Fax: (903) 593-0846<br>Email: jasonmazingo@potterminton.com<br><br>**Jay E. Heidrick**<br>Polsinelli Shughart PC<br>6201 College Blvd.<br>Suite 500<br>Overland Park, KS 66211<br>(913) 451-8788<br>Fax: (913) 451-6205<br>Email: jheidrick@polsinelli.com<br><br>**Melissa S. Ho**<br>Polsinelli - Phoenix<br>One East Washington Street<br>Suite 1200<br>Phoenix, AZ 85004<br>(602) 650-2028<br>Fax: (602) 264-7033<br>Email: mho@polsinelli.com<br><br>**Russell Scarritt Jones, Jr.**<br>Polsinelli Shughart PC<br>120 W. 12th Street<br>Suite 1600 | Collin Bank,<br>Justin State Bank,<br>Sulphur Springs Bancshares, Inc.,<br>The City National Bank of Sulphur Springs,<br>East Texas Bancshares, Inc.,<br>First National Bank of Jasper,<br>First State Bank (Livingston),<br>Overton Financial Corp,<br>First State Bank (Overton),<br>Lindale State Bank,<br>Van Alstyne Financial Corporation,<br>Texas Star Bank,<br>Paris Bancshares, Inc.,<br>The Liberty National Bank in Paris,<br>Independent Bank Group, Inc.,<br>Independent Bank,<br>South Plains Financial, Inc.,<br>City Bank,<br>SB&T Holdings, Inc.,<br>State Bank and Trust Company,<br>Third Coast Bancshares, Inc.,<br>Third Coast Bank, SSB,<br>Nexbank Capital, Inc.,<br>Nexbank, SSB,<br>First Private Holdings, Inc.,<br>First Private Bank of Texas,<br>Golden Bank, N.A.,<br>Green Bancorp, Inc.,<br>Greenbank, N.A.,<br>Midsouth Bancorp,<br>Midsouth Bank, N.A.,<br>United Heritage Credit Union,<br>Citizens Bancorp, Inc.,<br>Citizens National Bank,<br>Emory Bancshares, and<br>First National Bank of Emory<br>Pilot Point Bancorp, Inc. |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| Kansas City, MO 64105<br>(816) 421-3355<br>Fax: (816) 374-0509<br>Email: rjones@polsinelli.com | Point Bank |
| **Rick L. Rambo**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>(713) 890-5175<br>Fax: (713) 890-5001<br>Email: rrambo@morganlewis.com<br><br>**Thomas R. Davis**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>(713) 890-5000<br>Fax: (713) 890-5001<br>Email: tdavis@morganlewis.com<br><br>Michael L. Raspino<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>(713) 890-5000<br>Fax: (713) 890-5001<br>Email: mraspino@morganlewis.com | Computer Service Professionals, Inc. |
| **Robert D. Nelon**<br>Hall Estill Hardwick Gable Golden & Nelson PC - Oklahoma<br>100 North Broadway<br>Chase Tower | Bankers Bancorp of Oklahoma, Inc. and The Bankers Bank |

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| Suite 2900<br>Oklahoma City, OK 73102-8865<br>(405) 553-2805<br>Fax: (405) 553-2855<br>Email: bnelon@hallestill.com<br><br>**Melissa Richards Smith**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>(903) 934-8450<br>Fax: (903) 934-9257<br>Email: melissa@gillamsmithlaw.com<br><br>**Harry Lee Gillam, Jr.**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>(903) 934-8450<br>Fax: (903) 934-9257<br>Email: gil@gillamsmithlaw.com | |
| **Charles M. Hosch**<br>Strasburger & Price - Dallas<br>901 Main St.<br>Suite 4300<br>Dallas, TX 75202<br>(214) 651-4678<br>Fax: (214) 651-4330<br>Email: charles.hosch@strasburger.com | Advancial Federal Credit Union |
| **Bryan Guy Harrison**<br>Morris, Manning & Martin, LLP<br>1600 Atlanta Financial Center<br>3343 Peachtree Road, NE<br>Suite 1600<br>Atlanta, GA 30326<br>(404) 233-7000<br>Fax: (404) 365-9532<br>Email: bgh@mmmlaw.com | DATCU Credit Union |

| Counsel | Parties represented by one or more of the listed Counsel |
|---------|----------------------------------------------------------|
| **Randy L. Roberts**<br>Blalack & Williams, PC<br>5550 LBJ Freeway<br>Suite 400<br>Dallas, TX 75240<br>(214) 630-1916<br>Fax: (214) 630-1112<br>Email: rroberts@blalack.com | |

Two copies were also served on the district court judge:

HON. RODNEY GILSTRAP, JUDGE
U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
Sam B. Hall, Jr. Federal Building
and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
PHONE: (903) 935-3868
FAX: (903) 935-2295

/s/ Daniel C. Cooley
Daniel C. Cooley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:  (202) 408-4000